IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CHRISTOPHER R. DESMOND, CHRISTOPHER CRAIG, JOHN BOYER, ANTHONY ROBERTS, JUAN ORTIZ, JOSEPH M. WALLS, ANDRE JOHNSON, DERRICK TALLEY, LARRY D. NAVE, MARK HAMILTON, KENDALL SMITH, JOSHUA LIEBAL, JOSHUA LEMONECK, JUSTIN ERSKINS, ROBERT EDGAR,

Plaintiffs, et al

V.

PERRY PHELPS, commissioner of Delaware Department of corrections, Individually, and IN His official capacity, David Pierce, Warden James T. Vaughn correctional center, Individually, and in official capacity, Acting Warden Phil Parker, Individually, and in his official capacity, Deputy Warden James Scarobough, Individually and in his official capacity, Geoff Klopp, Individually, and in his official capacity as President of The Delaware correctional officers Association union, John & Jane Doe, Individually, and in their official capacity as Executive members of The correctional officers committee union, Correctional officers Association members John & Jane Doe, Individually, and in their official Capacity, et al

Defendants, et al.,

{ CLASS ACTION

Civ. A. No. 17-218 LPS
Preliminary Injunction
Temporary Restraining order

MOTION FOR A PRELIMINARY INJUNCTION OR A TEMPORARY RESTRAINING ORDER PROHIBITING THE DEFENDANT'S et al FROM FURTHER CONSTITUTIONAL RIGHTS VIOLATIONS AGAINST PLAINTIFF's et al

1

## Defendants

Perry Phelps, Commissioner of corrections for the state of Delaware In his official capacity, and Individual capacity, in engaging with his subordinates, David Pierce, Acting Warden Phil Parker, James Scarborough, President of the correctional officers union Geoff Klopp, Executive members of the correctional officers union, and its general membership officially and in their individual capacities In a civil conspiracy in violation of 42 U.S.C. § 1985 To Deny Plaintiffs, Their First, Fifth, Eighth and Fourteenth Amendments under the constitution To Due Process And Equal Protection. All too obtain unjust enrichment for Themselves and their union members by Exploiting the death of Lt. Steven Floyd on Feb. 2, 2017 at James T. Vaughn Correctional Center by inmates who the defendants, etal Phelps, Pierce, Parker, Scarborough, officers, etal have identified and secured in isolation

On Feb. 1, 2017 The defendants, etal Phelps, Pierce, Parker, Scarobough, correctional officers, etal Their President Klopp and union members instituted a total lockdown of Delaware's Prison System. From Feb. 1, 2017 to Feb. 14, 2017 Plaintiffs Were denied medical, sick call slips, Grievances, Legal mail, legal access, Showers, adequate food Portions, sanitary living conditions, Exercise, Phone calls legal or personal.

The plaintiffs, etal were on Feb. 7, 2017 given limited Showers, Phone calls and legal access along with Recreation "in-house", Limited, until Feb. 20, 2017.

2

<u>Defendant's 1983 Cont.</u>

The defendants, etal Phelps, Parker, Pierce, Scarborough, Klopp, correctional officers union members, blamed the incident and Floyd's death on <u>CLASI v. Coupe</u>, No. 15-688 GMS (D. Del. Sept. 1, 2016) Agreement, second not enough correctional officers, and their pay was to low at $33,000 per year with $4,000 in hazardous duty pay a total of $37,000 plus per year. Their successful complaint to the legislature was because of low pay "All these problems occurred" President Klopp, etal members, etal. Considering Penn, New Jersey and Maryland's Prison systems are twice as large as Delaware's with gang violence, assaults on inmates and staff as well as murders of staff at twice the rate of Delaware however, exist and function without the per inmate officers ratio Delaware enjoys today and on Feb. 1, 2017. Moreover, a state correctional officers in Arizona earns $36,800 per year, where the cost of living is higher and the "chance of being assaulted or murdered" on the job or off the job by gangs." Is 100 times more likeley then a Delaware guard being treated the same in prison. The Defendant's Phelps, Pierce, Parker, Scarbough, Klopp, correctional officers union members, etal could not obtain pay raises until they exploited Lt. Floyd's death, and the voiding of the <u>CLASI v. Coupe</u>, No.#15-686GMS Agreement, so they can now return to sleeping their shift away while denying Plaintiffs, etal their constitutional rights in retaliation for Lt. Floyd's death from identified inmates of C-Building.

3

## 42 U.S.C. §1985 (2)(3)

The plaintiff, etal have to establish a constitutional right, and that the defendants, etal Phelps, Pierce, Parker Scarbrough, correctional officers union members, etal have engaged in a civil conspiracy to deny those rights under §1985 (2)(3).

1) The Plaintiffs, etal have a First Amendment Right to Freedom of Religion access too a spiritual advisor, which The defendants, etal Phelps, Pierce, Parker, Scarbrough, correctional Officers union members have denied plaintiffs, etal in every form since Feb. 1, 2017. Defendants, etal deny Catholic's altogether Any Religious advisor in SHU-MHU housing and have denied Them access to viewing Any religious services ON TV considering they have cut services off The institutional prison access Station, and have allowed The TV system to fall into such disrepair inmates are denied access to any religious programing outside The institution. Plaintiffs, etal have filed multiple complaints with defendants, etal Phelps, Parker, Pierce, Scarbrough, their counsel at The Attorney General's office exhausting The claims Administratively, without redress.

The defendants, etal claim there's not enough correctional officers and Their " in fear, for their safety" if They allow inmates to have " services" or access to "a spiritual advisor." However, the defendants, etal Phelps, Parker, Scarbough, Pierce, correctional officers union can point to NO prior history of " JTVCC prison violence at The Chaple to warrent any First Amendment Religion denial."

4

## Civil Conspiracy § 1985 (2)(3) cont.

The defendants, etal are in violation of plaintiffs, etal Fifth Amendment Rights in denying them Due Process of law by depriving them of a full and fair hearing before their placement into solitary confinement disciplinary housing SHU status in violation of <u>Wilkerson v. Austin</u>, 545 U.S. 209, 214-15 (2005). All to void <u>CLASI v. Coupe</u>, their intended goal, inflicting the maxim physical and psychological damage upon plaintiffs, etal, in retaliation for Lt. Floyd's death. The defendants, etal Phelps, etal have all acknowledged that SHU isolation quasi confinement inflicts physical and psychological harm upon inmates. See <u>Clasi v. coupe</u>, Agreement. Plaintiffs, etal claim defendants, etal are using the forbidden "Predictive behavior found to be unconstitutional in <u>Wilkerson</u>, 545 U.S. 209, 214-15" as reason to confine plaintiffs in SHU status. The plaintiffs, etal were not housed in C-Building on Feb. 1, 2017 nor were they involved in any incidents to warrant SHU - solitary confinement, without due process of law <u>Wilkerson</u>, 545 U.S. 209, 214-15. The defendants, etal Phelps, Klopp, union members by memo to defendants, Pierce, Parker, Scarobough demanded without foundation that <u>Clasi v. Coupe</u> be voided. Here defendants, etal Phelps, Pierce, Parker Scarobough, correctional officers union are placing plaintiffs, etal in solitary confinement status based solely on future unfounded "Predictive behaviors" not even if they had past disciplinary record. <u>Shoatz v. Wetzel</u> 2016 U.S. Dist. LEXIS 17517.

5

<u>Sources</u>: "Use of Restrictive Housing in U.S. Prisons & Jails, 2011-12," DOJ Bureau of Justice Statistics (Oct. 2015); "Report and Recommendations concerning The use of Restrictive Housing," DOJ (Jan. 2016); www.themarshallproject.org; www.theweek.com; www.justice.gov.

The rest of The United States prison systems are attempting to curtail The solitary confinement use while Delaware is increasing it to include and entire prison system all to obtain unjust inrichment by its correctional officers and The determinate too plaintiffs, etal Physical and psychological distress. The (BJS) concluded That "It should come as no surprise That correctional facilities with higher rates of prisoners held in segregation" had "higher levels of facility disorder, lower levels of inmate trust and confidence in staff; higher concentrations of violent inmates and inmates with longer criminal histories ___ "

The defendants, etal Phelps, Pierce, Parker Scarobough are deliberately placing plaintiffs, etal in harms way to obtain unjust inrichment by placing All inmates in solitary confinement quasi SHU status without due process of law.

2) <u>Eighth Amendment violation</u>:

A Body of literature going back decades document the Psychic anguish of isolation - severe depression, rage, panic attacks, PTSD, paranoia, hallucinations, self-mutilation. To name a few The suicide rate in solitary is five time the rate in general population. No one involved in mass incarceration escapes being dehumanized by it. That includes correctional officers who experience high rates of depression

domestic violence, substance abuse, and suicide. A third of them suffer from PTSD. "Going into hell for decades at a time will wear you out," says Lance Lowry, President of AFSCME Local 3807, a correctional officers union in Huntsville, Texas. There is reason to believe that these effects may be even more pronounced on correctional officers assigned to SHU-MHU units. Human Rights Watch has written that correctional officers "know they can get away with excessive, unnecessary, or even purely malicious violence, including beatings, torture and predatory behaviors," which is the circumstances at JTVCC today. From Feb. 1, 2017 to Feb. 6, 2017 inmates were denied all mental health visits, medical sick calls, doctor visits, dental visits. Shortly after Feb. 6, 2017 plaintiffs, et al have been placed on limited medical and mental health contacts, The defendants, et al Phelps, Pierce, Parker, Scarobough still deny inmates adequate food portions causing weight loss and inmates to become unhealthy in retaliation for Lt. Floyd's death. Given plaintiffs, et al are limited to less then 1 hour per day recreation and the lack of physical and mental exercise plaintiffs, et al should not be losing weight however, some inmates in 1 month have lost in excessive of 20 lbs in body weight, because defendants, et al are using food as punishment against plaintiffs, et al. The constitution prohibits the deprivation of food as punishment for inmates. The defendants, et al are knowingly engaged in harming plaintiffs, et al in retaliation for Lt. Floyd's death.

7

Plaintiffs, etal claim defendants, etal Phelps, Pierce Parker, Scarobough, etal have instituted procedures/policy in conjunction with The Delaware correctional officers union, unions representing Executives captains, staff Lieutenants, Lieutenants, counselors, etal collectively have pursuant to § 1985 entered into a civil conspiracy by creating a multilateral system within The DOC depriving plaintiffs, etal of basic constitutional Rights to due process and equal treatment to protect Their mutual union members interests in higher pay and benefits filling unneeded jobs by presenting false misleading high rates of Assaults and other incidents or Threats posed to Them and The public in general from inmates.

The defendants, etal Phelps, Pierce, Parker Scarobough, etal correctional officers union member instruct officers to record "high numbers of disciplinary reports (class 1 offenses) against plaintiffs, etal (inmates collectively) so in their yearly budget reports they can "Claim security Threats" warranting more correctional officers, managers counselors Administrators, and sanctioned filled SHU-MHU segregation units. The fraudulent misrepresentation to The Executive and legislative branches of government have denied plaintiffs Their constitutional Rights under The Fifth and Fourteenth Amendments to Due Process to avoid arbitrary disciplinary sanctions imposed by prison officials for The sole benefit of "more correctional officers and Administrators."

Plaintiffs, cite amoung other things The Correctional Officers union testimony oppossing The repeal of the Death Penalty in legislative Hall in April of 2014 hearing. The correctional officers failed to disclose its members benefit from Delaware's death penalty by having extra "officers" keeping watch on inmates in SHU unit, Their Knowing fraudelent Claim " that adding another 14 death row "lifers" to Delaware's inmate population posed a threat to their members safety." The union failed to disclose Delaware has in excess of 300 lifers in the prison system.

Plaintiffs, etal Claim the defendants, etal have to produce high rates of manufactured "Threats" and incidents in an attempt to get higher pay and benefits from The Delaware tax payers.

The subordination agreement between The correctional Officers union and Managers union which include Probation and Parole assures Plaintiffs, etal would suffer a high rate of recidivism from their solitary confinement status for their individual members benefit in employment overtime and in direct opposition to The legislative intentions of The DOC creation in (11 Del. C. § 6501-6502) Rather Then investing in Educational and treatment programs reducing recidivism a contrary position to union members benefit, Reducing recidivism means reducing prisoners population and needed officers, Managers.

The Prison review committees have a vested interest in assuring plaintiffs, etal status remains solitary confinement to benefit them individually, and of family member.

The correctional officers union always complaines about never having enough staff, but never offers solutions to reducing the inmate population with Education, employment, treatment programs, behavior Gaintime credits (Goodtime) because its contrary to their interest of "more officers bigger prisons more inmates."

The defendants, etal Phelps, Pierce Parker scarobough, union members are now engaged in exploiting Lt. Floyd's death by denying inmates basic human needs, food, medical attention, mental health meetings, physical exercise in retaliation for Lt. Floyd's death claiming "Their life's are in danger if inmates are allowed to adhere to the <u>Clasi v. Coupe</u> agreement." "because that allowed the inmates of C-Building to plan the attack" (President of Union Klopp Feb. 4, 2017 News Journal at page#4) of course discounting they could have planned (if any) while sitting in their cells the "Other 20 hours a day!" However, that would mean "inmates spend to much time bored with nothing to do." But it could have "only been done because of <u>CLASI</u> requiring officers to not sleep 3 hours per shift.

The failure of defendants, etal Phelps, Pierce, Parker Scarobough to supervise their subordinates despite being repeatly informed leaves them in complicity with "officers" to deprive inmates basic human needs, due process and denial of medical, dental, mental health care in retaliation for Lt. Floyd's death.

## Preliminary Injunction

1) The plaintiffs, etal have established they have a First Amendment Right to access their Practice of Religion with advisors which is being denied them by defendants without justification since Governor John Carney, Secretary Robert Coupe, commissioner/Judge Danberg, Bishop Melvan, and countless other volunteers state officials have attended Catholic mass at JTVCC without incident a few times per year. The defendants, etal Phelps, Pierec, Parker, Scarbough correctional officers union can't point to <u>one incident</u> where any official or <u>their families</u> have been threatend by plaintiffs, etal to warrent denial of Religious services. Plaintiffs, etal seek immediate access to Religious services and advisors.

2) The plaintiffs, etal have established that inmates (plaintiffs) not housed in C-Building on Feb. 1, 2017 did not participate in nor were any involved with the inmates to warrent being housed in solitary confinement quasi SHU status denied basic human needs, due process under the <u>Wilkerson</u> 545 U.S. 209, 214-215 (2005) not too be held in SHU status without a hearing or opportunity to be heard or review the evidence defendants, etal have used to conclude "their need for solitary confinement status." A requirement under the Fifth Amendment, <u>Wilkerson</u>, 545 U.S. 209, 214-215.

3) The defendants, etal concided in <u>GLASI V. Coupe</u> The prolong affects of Solitary confinement causes both Physical and psychological damage to individuals <u>Shoatz V. Wetzel</u>, 2016 U.S. Dist. LEXIS 17517. Plaintiffs claim the defendants, etal Phelps, Parker Pierce, Scarobough blanket Solitary confinement sanction imposed upon Them violate Their Eighth Amendment Rights to be free from "harm" while imprisoned. The defendants The correctional officers cant identify <u>one inmate</u> outside C-Building on Feb. 1, 2017 who participated in or acted in comformity with inmates of C-Building to <u>harm</u> or disrupt the institutional policy or procedures staff. The defendants, etal can point to No justification or Penologial goal in their wanton inflicting physical and psychological harm on Non-participating inmates (plaintiffs) in retaliation for Lt. Floyd's death, entitling plaintiffs, etal to and immediate Preliminary Injunction to access with mental Health counseling, medical visits, Dental visits and relief from Solitary confinement causing The constitutional violation.

4) The state's legitimate penological interest must be considered in determining whether a liberty interest is implicated in The transfer of a prisoner to solitary confinement. <u>Estate of Dimarco V. Wyoming Department of corrections</u>, 473 F.3d 1334, 1342 (10Th cir. 2007). Procedural Justice furthers vital Penological interest, and as such, The Need for effective Prison management does not redound exclusively in favor of defendants, etal in This case.

## Due Process

Empirical Research, Constitutional Law, and Principles of correctional management Recognize The importance of procedural fairness.

Decades of behavioral science research have demonstrated That perception of procedural fairness influence individual behavior. This is The case across a wide range of settings, from business to courts and prisons. While it is common to assume That people care most about outcomes --- what benefits or harms They ultimately incur studies show That in many ways people are " more interested in issues of process Than issues of outcome, and --- their evaluation of experience and relationships are influenced by The form of social interaction." E. Allen Lind & Tom R. Tyler, <u>The social psychology of Procedural Justice</u> 1 (1988). (finding That public perception of Procedural fairness "impacts people's compliance with law, Their willingness to cooperate with and assist The police, and Whether The public will impower The police"). Conversely, research suggest "<u>That unjust situations and outcomes lead to frustration and strain which can ultimately cause crime and delinquency.</u>" Eric G. Lambert et al., <u>The relationship among Distributive and Procedural Justice and correctional life satisfaction, Burnout and turnover intent: An Exploratory Study</u>, 38 J. Crim. Justice 7 (2010). When people perceive That They have been treated fairly, They are more likely to accept " The need to bring Their behavior into line with The dictates of an external authority." Tom R Tyler, <u>Why People obey The law</u> 25 (1990).

Studies show that the same principles that our courts have recognized as fundamental of constitutional due process, "Notice of the case against one and opportunity to meet it," Matthews v. Eldridge, 424 U.S. 319, 348 (1976) are essential to fostering perceptions of procedural fairness and legitimacy. As the Supreme Court has repeatedly explained, voice participation, and neutrality" are rudiments of due process which restores faith that our society is run for the many, not the few, and that fair dealing rather than caprice will govern affairs of men." Morrissey v. Brewer, 408 U.S. 471 (1972); see also Wilkerson v. Austin, 545 U.S. 209 (2005) (The new policy provides that an inmate must receive notice of the factual basis leading to consideration for OSP placement and a fair opportunity for rebuttal. Our procedural due process cases have consistently observed that these are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations); The plaintiffs, etal invoke Wilkerson in that they claim defendants have denied them due process before they placed them in quasi solitary confinement conditions to inflict retaliation for the death of Lt. Floyd.

The defendants, etal, correctional officers can't complaine now of staff shortages given they increased the officers in each location reduced the number of inmates on recreation in MHU-23 to 12 inmates per recreation with eight guards per unit, with 3 to 4 more guards in building 24 unit.

14

The defendants, etal have little problems assembling A Tactical Team of 50 officers to sexually harrass Plaintiffs, etal with Body searchs in violation of (PREA). Moreover, defendants, etal correctional officers union created their own problems in Delaware prisons which they now seek to exploit by unleashing The DOC Tactical team on plaintiffs, etal in a attempt to provoke a inmate to officer confrontation to extract further pay raises and benefits from a misinformed legislature and executive branch of government officials who lost focus of their creation of The DOC (11 Del. C. § 6501 - 6502). The defendants Tactics increases recidivism rates which feeds their benefits by reducing recidivism a vital and judicially recognized penological goal. See McKune v. Lile, 536 U.S. 24, 36 (2002) (Approving a clinical rehabilitative program aiming to reduce recidivism and noting that "the court has instructed that rehabilitation is a legitimate penological interest that must be weighed against the exercise of an inmates liberty"); Herring v. Keenan, 218 F.3d 1172, 1185 (10th cir. 2000) (recognizing the states "important penological interest in decreasing recidivism); U.S. v. Kincade, 379 F.3d 813, 839 (9Th cir. 2004) (noting the states "enormous interest in reducing recidivism"). Moreover, decreasing rates of reoffending post-release is a central and organizing principle of effective prison administration. In fact, The Bureau of Prisons evaluates many of its programs based on their efforts on recidivism rates. Recognizing This important goal and defendants, etal

Totally opposite position of oppressing plaintiffs denying them any form of rehabilitation assuring their failure increasing their chances at recidivism all for "self-benefit". They have not purpose <u>one beneficial rehabilitation program to "reduce the level 5 prison population"</u>. D.O.C. goal 11 Del. C. § 6502. They have halted all beneficial rehabilitation programs, <u>Greentree drug treatment, Brothers Keeper faith based behavior treatment program</u>, restricted participation in other forms of rehabilitation programs and work status all to keep recidivism high.

Establishing that defendants, etal have received no process before they were placed in quasi solitary confinement SHU-status, no prior notice, no hearing was conducted and defendants, etal gave no opportunity to participate in the decision regarding their transfer to SHU-status. They have been placed indefinite confinement based on unfounded "predictive behaviors" for which they have no history. Violates plaintiffs, etal constitutional rights under the Fourteenth Amendment to due process, <u>Wilkerson</u>.

<u>Human cost</u>

5) The high human costs of solitary confinement are well documented. Many jurisdictions report that a majority of prison suicides occur in solitary confinement. Jeffrey Smith McLeod, Anxiety, Despair, and Maddening Isolation of Solitary Confinement. Jeffrey Smith <u>70 U. Pitt. L. Rev. 647, 649 (2009)</u>.

16

And The consistent and overwhelming medical evidence demonstrates " That solitary confinement alone, even in The absence of physical brutality or unhygienic conditions, can produce emotional damage, decline in mental functioning and even The most extreme form of psychopathology such as depersonalization hallucination and delusion." Thomas B. Benjamin & Kenneth Lux <u>Solitary Confinement as Psychological Punishment</u>, 13 Cal. Western L. Rev. 265, 268 (1977). The use of solitary confinement is subject to due process consideration under <u>Wilkerson</u>, 545 U.S 209, 214-15. And The defendants, et al have denied those plaintiffs, et al their Rights. Plaintiffs, et al seek Injunctive Relief in The immediate release from conditions of confinement That do not comport with pre Feb. 1, 2017 confinement agreed to in <u>CLASI v. Coupe</u>, No.# 15-688GMS Settlement under contract principles. <u>Leonard v. Univ. of Delaware</u>, 204 F.Supp. 2d 784, 789 (D.Del. 2002)

6) The plaintiffs, et al respectfully move The court appoint a independent monitor to oversee all court relief for compliance by defendants, et al to avoid sabotage by defendants, et al and The correctional officers union members.

## CONCLUSION

The plaintiffs have established irreparable harm if the Court fails to issue a preliminary Injunction to enforce constitutional Rights which The public has no interest in violating. Establishing The elements for and Injunction.

17

# Certificate of Service

I, _Christopher R. Desmond_ hereby certify that I have ~~served~~ E-Filed a true and correct cop(ies) of the attached _Preliminary Injunction_ _____ Upon the following parties/persons:

To: _Joseph C. Handlow_
_Deputy Attorney General_
_josepho.handlow at state.de.us_

To: _Bruce A. Rodgers_
_Attorney At Law_
_Attorney For Correctional officers_
_Union_

To: _____

To: _____

~~BY PLACING SAME IN A SEALED ENVELOPE~~, and depositing same _Law Library_ ~~in the United~~ _Box_ ~~States Mail~~ at the James T. Vaughn Correctional Center, Smyrna, DE 19977.

On this _20_ day of _March_, 20_17_

_Christopher R. Desmond_